Law Offices of Gita B. Kapur & Associates
Gita B. Kapur, Esq. (CA SBN 223754)
617 S. Olive St., Suite 1000
Los Angeles, CA 90014
Tel: (213) 327-0455; Fax: (213) 327-0707
Email: gita.kapur@gitakapurlaw.com

Attorney for Petitioner,
Eunha Oh

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| EUNHA OH,<br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ JR., Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID J. VENTURELLA, Acting Director, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of U.S. Department of Homeland Security, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General; WARDEN, Adelanto ICE Processing Center,<br>Respondents. | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>[Immediate Consideration Requested – Petitioner is Detained]<br><br>[Submitted with Declaration of Eunha Oh]<br><br>Petitioner's DHS No.: A208-839-580 |

## I. INTRODUCTION

1. Petitioner, Eunha Oh is a thirty-nine-year-old North Korean defector and citizen of South Korea. *See* Ex. A (South Korean Passport) at 1; Ex. B (Certificate of North Korean Defector Registration) at 2. She has no criminal history: the FBI Identity History Summary that the Department itself submitted at her bond hearing reflects no conviction, no charge, and no criminal arrest, and the Department's own Form I-213 states that she "has no criminal history." *See* Ex. C (FBI FBI Identity History Summary) at 5-7; Ex. D (Form I-213 Record of Deportable/Inadmissible Alien) at 8-11. She has a timely filed, pending application for asylum. *See* Ex. E (Form I-589 Receipt Notice) at 12. She has never failed to appear for any immigration hearing, appointment, or obligation. She has been held in civil immigration detention at the Adelanto ICE Processing Center since August 20, 2026. *See* Decl. of Eunha Oh ¶ 4. She brings this Petition under 28 U.S.C. § 2241 to challenge the lawfulness of that detention.

2. Ms. Oh is detained because she did precisely what the government instructed her to do. On July 28, 2026, U.S. Citizenship and Immigration Services issued her a Form I-797C Application Support Center Appointment Notice directing her to appear at 3747 South La Brea Avenue, Los Angeles, California, on August 20, 2026, at 11:00 a.m., to submit biometrics in support of her own affirmative asylum application. *See* Ex. F (USCIS Biometrics Appointment Notice) at 13. The notice warned her that failure to

appear could result in her application being deemed abandoned. *Id.* She appeared. Immigration and Customs Enforcement was waiting for her.

3. This is not Petitioner's characterization. It is the government's. The Form I-213 prepared by the arresting agency, which bears no executed signature in either the preparing officer's or the examining officer's signature block though it identifies Deportation Officer J15507 DANGIOLILLO and Examining Officer MENDOZA-MAZARIEGOS, 9307, states that ICE Enforcement and Removal Operations "Los Angeles Team 1, along with the Application Support Center (ASC), conducted an enforcement action operation at 3747 South La Brea Avenue, Los Angeles CA 90016, where OH, Eunha, A# 208 839 580 was scheduled for an interview related to a pending Asylum Application, Form I-589." Ex. D at 9. Officers identified Ms. Oh in the waiting area "[b]ased on available photographs and physical descriptions." *Id.* She was then "escorted to a private room by ASC Officers, where ERO Officers displaying approved ICE badges were staged for the apprehension." *Id.* The form's "Arresting Agents" field lists several officers by surname and badge number. *Id.*

4. The Department of Homeland Security (DHS) therefore fixed, twenty-three (23) days in advance, exactly where Ms. Oh would be and exactly when she would be there: USCIS, a component of that Department, set the appointment and compelled her attendance. By ICE's own account, ERO then coordinated with the Application Support Center, worked from photographs of Petitioner, and staged officers in a private room in

advance of her arrival. It obtained no judicial warrant. And so far as this record discloses, and DHS produced nothing else at the bond hearing, it obtained no administrative warrant of arrest under 8 C.F.R. § 236.1(b) either. No warrant of any kind was shown to Ms. Oh, then or since. Decl. of Eunha Oh ¶ 48; Ex. H ¶ 12.

5. That is the first constitutional and statutory defect in Ms. Oh's custody. Congress authorized warrantless civil immigration arrests inside the United States only in a narrow circumstance: where the officer has reason to believe that the person "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *accord* 8 C.F.R. § 287.8(c)(2)(ii). An agency with time enough to coordinate with a sister component, assemble photographs, and position officers in a room before its target walks in cannot plausibly maintain that it lacked the time to obtain a warrant. The escape predicate is not a formality to be recited after the fact; it is the entire statutory condition on the warrantless arrest power, and it is enforceable through the Fourth Amendment.

6. What followed compounded the violation. Under 8 C.F.R. § 287.3(d), DHS was required to determine within forty-eight hours of a warrantless arrest "whether the alien will be continued in custody or released on bond or recognizance." Under 8 C.F.R. § 236.1(c)(8) and (g), an officer authorized to issue a warrant of arrest may release an alien not described in section 236(c)(1), and an immigration official may issue and serve Form I-286, Notice of Custody Determination, which must advise the alien of the right to request custody redetermination by an Immigration Judge. On information and belief,

none of that happened. No Form I-286, Notice of Custody Determination, was ever served on Ms. Oh. No bond was ever set or denied by any DHS officer. Ms. Oh was never advised that she could ask an Immigration Judge to review her custody. The Form I-213 simply recites, without analysis, that "OH will remain in ICE Custody pending a hearing with an Immigration Judge" and "pending HER removal to South Korea." Ex. D at 10-11.

7. The consequence is that for twenty-six days no one, not ICE, not an Immigration Judge, made any individualized determination that Ms. Oh's detention was necessary. There was no initial bond determination at all. What the Immigration Court conducted on September 15, 2026 was styled a custody *re*determination under 8 C.F.R. § 1236 (Ex. G (Order of The Immigration Judge)), but there was no initial determination to redetermine.

8. When a determination finally issued, on September 15, 2026, the Immigration Judge denied bond and found Petitioner "flight risk." Ex. G (Order of the Immigration Judge) at 14. Three features of that ruling matter here. The court declined to adjudicate the lawfulness of Petitioner's arrest at all, finding that "Even if there were to be an egregious violation of the Constitution, that does not bear on the Court's decision … insofar as the court can see." Ex. H ¶ 21. It placed the burden of proof on Petitioner, the detained, indigent party. *Id.* at ¶ 22. And having concluded that no bond would suffice, it addressed neither Petitioner's ability to pay nor any alternative to detention, although

counsel argued both. It ruled on a record in which the government's entire evidentiary submission had been filed at 12:32 a.m. that same morning. Ex. C; Ex. D; Ex. H ¶ 8.

9. Petitioner does not ask this Court to reweigh the discretionary factors set out in *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). She asks this Court to decide questions of law and questions of constitutional right that neither the Immigration Judge nor the Board of Immigration Appeals has authority to resolve: (i) whether her warrantless arrest, executed as the culmination of a pre-planned operation, complied with 8 U.S.C. § 1357(a)(2) and the Fourth Amendment; (ii) whether her detention may lawfully continue when DHS never made the initial custody determination that its own regulations require; and (iii) whether a two-word denial, unsupported by findings and rendered on a record in which the government bore no burden whatsoever, satisfies the Due Process Clause of the Fifth Amendment.

10. Petitioner accordingly seeks a writ of habeas corpus ordering her immediate release on appropriate conditions or, in the alternative, an order directing Respondents to afford her, within seven days, a constitutionally adequate individualized custody hearing at which the government bears the burden of justifying her continued detention by clear and convincing evidence, at which the Court's decision is supported by a contemporaneous record and reasoned findings, and at which alternatives to detention and ability to pay are considered.

///

## II. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241(c)(1) and (c)(3) and 28 U.S.C. § 1331. Petitioner seeks declaratory relief under 28 U.S.C. §§ 2201–2202 as a remedy only; the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 31 (2002) (All Writs Act supplies no "federal subject-matter jurisdiction in its own right").

12. Habeas jurisdiction extends to challenges to the legality of civil immigration detention. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687–90 (2001); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Petitioner does not challenge a final order of removal; there is none. Her removal proceedings under INA § 240 remain pending before the Adelanto Immigration Court, with a master calendar hearing calendared for October 6, 2026. Ex. I (EOIR Automated Case Information).

13. Title 8 U.S.C. § 1226(e) is no bar. As amended, it provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e), as amended by Pub. L. No. 119-1, § 3(b)(1), 139 Stat. 3 (Jan. 29, 2025). Neither sentence reaches this Petition. Section 1226(e)

"precludes an alien from challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release," but it does not preclude challenges to "the statutory framework that permits the alien's detention without bail." *Jennings v. Rodriguez,* 583 U.S. 281, 295 (2018) (plurality opinion) (quoting *Demore v. Kim,* 538 U.S. 510, 516–17 (2003)). Because "the extent of the Government's detention authority is not a matter of discretionary judgment, action, or decision," such a challenge "falls outside of the scope of § 1226(e)." *Id.* at 296. The Ninth Circuit has applied that rule since *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011), and reaffirmed it after *Wilkinson v. Garland*, 601 U.S. 209 (2024), in *Martinez v. Clark,* 124 F.4th 775, 781–82 (9th Cir. 2024). The 2025 amendment does not alter the analysis: Petitioner does not ask this Court to set aside the Immigration Judge's weighing of the equities, but to decide the antecedent legal question whether she is lawfully in custody at all, and the constitutional minimum that attends any custody determination.

14. Title 8 U.S.C. § 1252(g) is likewise no bar. It reaches only three discrete executive decisions – to "commence proceedings, adjudicate cases, or execute removal orders" – and must be read narrowly. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Petitioner challenges the manner of her arrest and the lawfulness of her ongoing detention. She challenges none of the three.

15. Title 8 U.S.C. § 1252(f)(1) is no bar because the relief sought is individual, not classwide. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (§ 1252(f)(1)

preserves relief "with respect to the application of" the detention provisions "to an individual alien").

16. Petitioner is in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, San Bernardino County, California, within the Central District of California, Eastern Division.

17. Venue is proper in this District. Under *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973), venue lies in the district of confinement, and the immediate custodian is the proper respondent. The arrest giving rise to these claims occurred at 3747 South La Brea Avenue, Los Angeles, also within this district.

## III. PARTIES

18. Petitioner, Eunha Oh (DHS No. A208-839-580) is a native of North Korea and a citizen of South Korea. She is presently detained at the Adelanto ICE Processing Center.

19. Respondent, Warden of the Adelanto ICE Processing Center is the official with day-to-day physical custody of Petitioner and is her immediate custodian for purposes of this action. *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 439 (2004). Petitioner names the remaining Respondents in the alternative and out of an abundance of caution. The Supreme Court has expressly "decline[d] to resolve" whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation, *id.* at 435 n.8, and the Ninth Circuit decision on which that question turned was withdrawn,

*Armentero v. INS*, 382 F.3d 1153 (9th Cir. 2004). Dismissal of any additional Respondent would not affect this Court's jurisdiction over the immediate custodian.

20. Respondent, Ernesto Santacruz, Jr. is the Acting Field Office Director of the Los Angeles Field Office of ICE Enforcement and Removal Operations. The officers who arrested Ms. Oh acted under his authority, and he exercises legal custody over her and the authority to release her. He is sued in his official capacity.

21. Respondent, David J. Venturella is the Acting Director of U.S. Immigration and Customs Enforcement and bears ultimate responsibility within ICE for Petitioner's detention. He is sued in his official capacity.

22. Respondent, Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security, the agency with legal custody of Petitioner. He is sued in his official capacity.

23. Respondent, Todd Blanche is the Attorney General of the United States and is responsible for the Executive Office for Immigration Review, which adjudicates Petitioner's removal and custody proceedings. He is sued in his official capacity.

## IV. STATEMENT OF FACTS

### A. Petitioner's Background: North Korea, China, and South Korea.

24. Petitioner was born in North Korea on April 6, 1987. Conditions there were severe. Food and money were scarce. Petitioner survived by engaging in small-scale

trading of Chinese goods in the local market, activity the North Korean state does not permit. Officials enforcing the state's restrictions on private trade repeatedly stopped her and struck her on account of that activity. She was never arrested, charged, or brought before any tribunal. Decl. of Eunha Oh ¶¶ 3, 5, 6, 7.

25. Around 2010, Petitioner married Lee Seung Chul in North Korea. They have one daughter, now approximately sixteen years old, who remains in North Korea. Petitioner has had no contact with her daughter or her husband since she fled. *Id.* ¶ 8.

26. Petitioner fled North Korea in 2012 to escape the conditions and the treatment described above, and lived in China for approximately three years. No lawful status was available to her there: China routinely characterizes North Korean escapees as illegal economic migrants rather than refugees and forcibly repatriates them to North Korea. Repatriated persons face a substantial risk of detention, imprisonment, forced labor, torture, and other severe punishment; in some circumstances, they may face enforced disappearance or execution.[1] Petitioner therefore could not work lawfully, could not obtain identification, and could not seek the protection of the authorities, and she lived throughout that period under the constant risk of forcible return. *Id.* ¶¶ 10-12.

27. While in China, Petitioner suffered harm that forms part of the basis of her pending asylum claim. She has suffered from depression since that time and has taken medication for it. She was taking antidepressant medication obtained in South Korea at

[1] https://www.ohchr.org/en/press-releases/2023/10/china-must-not-forcibly-repatriate-north-korean-escapees-un-experts

the time of her arrest, a fact recorded on DHS's own Form I-213. *Id.* ¶¶ 12-14; Ex. D at 9.

28. Petitioner does not set out the particulars of her asylum claim in this Petition, and this Court need not reach them. Those facts are the subject of her pending Form I-589 and of her removal proceedings before the Immigration Court; they are not material to the statutory and constitutional questions presented here; and they concern family members who remain in North Korea and a period during which Petitioner was without legal status in China. Petitioner pleads the existence, timeliness, and non-frivolous character of the claim, which is all that bears on custody.

29. Petitioner left China for South Korea and entered South Korea on April 9, 2015. Ex. B at 2-4. On arrival, the South Korean government held her for approximately six months while it screened her to determine whether she was an agent of the North Korean state and provided orientation and cultural training. She was then released into the general population and granted South Korean citizenship. Decl. of Eunha Oh ¶¶ 15-16.

30. Petitioner struggled in South Korea. She could not obtain permanent work and had difficulty obtaining even part-time work. She could not reliably pay the rent. When she telephoned employers about part-time positions, they identified her North Korean accent as soon as she spoke and rejected her on the spot. In one restaurant job she did obtain, co-workers ignored her, bullied her, and discriminated against her because of

her accent and origin. Her depression persisted throughout this period. She attended church. *Id.* ¶¶ 17-21.

**B. DHS's Disputed Assertions Provided in Form I-213.**

31. DHS' Form I-213 (Ex. D) asserts that on November 14, 2016, Petitioner sought admission at Los Angeles International Airport as a visitor for pleasure under the Visa Waiver Program, that CBP refused her admission and found her inadmissible under INA §§ 212(a)(2)(D)(i) and 212(a)(7)(A)(i)(I), and that she "admitted under oath of engaging in prostitution within the past 10 years as of November 14, 2016." Also, DHS' Form I-213 records that Petitioner has no children. DHS' Form I-213 also states that Petitioner was offered "incentivized voluntary departure" and Petitioner "refused." Ex. D at 8, 10.

32. Petitioner addresses these assertions directly rather than leaving them to inference, because it is the only fact in DHS' submission that could conceivably bear on flight risk and because it may have influenced the custody decision below. Petitioner does not dispute that she sought admission as a visitor in 2016 and was refused. She disputes the assertion that she admitted under oath to having engaged in prostitution. Her account is that during that encounter she identified a person in the United States as her point of contact, that the person was engaged in prostitution, that she herself was not, and that she made no such admission. Decl. of Eunha Oh ¶ 22. Furthermore, since her arrest on August 20, 2026, Petitioner has not been asked by an ICE officer whether she is married, whether

she has children, or she has a spouse. During her health and medical checkup on August 21, 2026 and about seven days thereafter, Petitioner informed a nurse and a doctor at Adelanto that she has a daughter. *Id.* ¶ 62. Petitioner further denies DHS' claim that she was offered "incentivized voluntary departure and she refused. She does not recall any conversation about voluntary departure. *Id.* ¶ 79. These assertions appear in a document that, as set out in Section IV.I below, contradicts itself on Petitioner's health, her fear of return, her family, and her community ties. DHS submitted no underlying record of the claimed 2016 encounter – no sworn statement, no Form I-275, no Form I-877, no inspection record of any kind – either to the Immigration Court or to Petitioner.

33. The assertion is in any event immaterial to the questions presented. A refusal of admission is not a failure to appear. A person who presents herself at a port of entry, submits to inspection, and departs when admission is refused has complied with immigration authority, not evaded it. Any statement taken on that occasion would have been taken at a port of entry, without counsel, without an interpreter of record, and without any hearing, and it has never been tested in an adversarial proceeding. It produced no charge, no conviction, and no arrest; the FBI record DHS itself submitted shows no criminal history of any kind. Ex. C. DHS has alleged no criminal ground of removability here and has charged Petitioner solely under INA § 212(a)(6)(A)(i). Ex. J (Notice to Appear) at 25. Nothing in the assertion, even if credited in full, tends to show that Petitioner will fail to appear.

34. Petitioner further notes that Respondent's Motion for Bond Determination filed below stated that she had "no prior order of removal or voluntary departure, and no history of any other immigration violation." Ex. K (Respondent's Motion for Bond Determination and Proposed Order Filed with the Immigration Court) at 32. That statement reflected Petitioner's account as given to counsel and counsel's understanding of the record at the time the motion was prepared; DHS did not file its submission containing the 2016 assertion until 12:32 a.m. on the morning of the hearing. Exs. C, D. Petitioner brings the discrepancy to this Court's attention so that the Court proceeds on a complete record.

**C. Entry Into the United States and the Pending Asylum Application.**

35. Petitioner entered the United States on foot at or near San Diego, California, on or about September 22, 2025, without inspection and without a visa. Ex. J at 25. She was not apprehended at that time, was not placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1), and was not subject to any credible-fear determination. Decl. of Eunha Oh ¶ 23.

36. Petitioner thereafter lived openly in Los Angeles. She used her true name throughout. She never used an alias, never gave a false name or address to any agency, and never had any contact with immigration enforcement between September 2025 and August 2026. *Id.* ¶¶ 24, 33, 39.

37. In November 2025, within two months of her arrival, Petitioner retained Mr. Tak Byung Jin to prepare and file an application for asylum. She was introduced to him through a friend. He told her at the time that he was a paralegal; he later told her that he had become a licensed attorney in February 2026. *Id.* ¶ 26. A search of the member records of the State Bar of California reflects no attorney admitted to practice under that name. Ex. H ¶39. Petitioner paid him approximately $16,000 for the asylum application and a purported path to lawful status. She understood from him that her application had been filed in November 2025. *Id.* ¶¶ 27-28.

38. It had not. U.S. Citizenship and Immigration Services did not receive Petitioner's Form I-589, Application for Asylum and for Withholding of Removal, until July 10, 2026, and issued a receipt notice dated July 23, 2026 (Receipt No. LGL2690070268). Ex. E at 12; Decl. of Eunha Oh ¶ 28. The filing was nonetheless timely, falling within one year of Petitioner's September 22, 2025 entry. The application remains pending. Petitioner has never had an asylum interview.

39. Petitioner had no meaningful role in the preparation of the application that bears her name. Mr. Tak presented her with a signature page and directed her to sign it. She did not draft, review, or verify its contents, which were prepared in English, a language she does not read. *Id.* ¶ 29. On information and belief, the Form I-589 as filed states that Petitioner entered the United States on a tourist visa. That is not correct, Petitioner did not supply that information, and she does not know why Mr. Tak entered

it. The Notice to Appear (Ex. J), Form I-213 (Ex. D), and Petitioner's own account (Decl. of Eunha Oh ¶¶ 23, 30) all state that she entered without inspection.

40. Mr. Tak's unreliability is not a matter of inference. When undersigned counsel requested Petitioner's asylum declaration from him, he transmitted a declaration belonging to an entirely different client. *Id.* ¶ 31. Petitioner pleads these facts because the contents of the Form I-589 are properly attributed to Mr. Tak rather than to her, and because any discrepancy DHS may identify between that form and the record in this case originates with him.

41. Petitioner's asylum claim arises from harm she suffered in North Korea, in China, and in South Korea, as summarized in Section IV.A above and set out in her pending Form I-589. The claim is neither frivolous nor pretextual, and it gives Petitioner an affirmative reason to appear at every hearing.

42. On July 28, 2026, USCIS issued Petitioner a Form I-797C Application Support Center Appointment Notice directing her to appear on August 20, 2026, at 11:00 a.m., at the USCIS Application Support Center located at 3747 South La Brea Avenue, Los Angeles, California 90016, to provide biometrics in connection with her pending Form I-589. Ex. F at 13. The notice stated in bold that failure to appear could result in her asylum application being deemed abandoned. *Id.*

//

//

/

**D. The Pre-Planned, Warrantless Arrest of August 20, 2026.**

43. Petitioner arrived at the Application Support Center at approximately 10:30 a.m. on August 20, 2026, thirty minutes early for her 11:00 a.m. appointment. Benjamin Min-Ho Moon, a United States citizen, drove her to the appointment. He entered the building with her and passed through security with her, but did not accompany her into the interview area and was not present at the time of her arrest. Decl. of Eunha Oh ¶¶ 41-42, 52; Ex. K at 50.

44. Petitioner passed through building security, presented her appointment notice and her South Korean passport to a plainclothes female staff member, and checked in. The staff member took both documents and carried them into a back room. Petitioner was directed to wait in a chair in the common waiting area. *Id.* ¶¶ 42-44. DHS' own record confirms this sequence: "After entering the building and completing the security check-in process, OH was seated in the common waiting area for her appointment." Ex. D at 9.

45. Unknown to Petitioner, ICE ERO Los Angeles Team 1 had arranged with the Application Support Center to conduct what the Form I-213 calls an "enforcement action operation" at that location, targeting Petitioner by name and A-number, at the appointment USCIS had itself scheduled. *Id.* Officers had "available photographs and

physical descriptions" of Petitioner in hand and used them to identify her as she entered the building. *Id.*

46. At approximately 11:10 a.m., after roughly thirty minutes of waiting, a plainclothes male employee called Petitioner's name and led her into a separate room. Decl. of Eunha Oh ¶¶ 44-45. The Form I-213 states that Petitioner "was escorted to a private room by ASC Officers, where ERO Officers displaying approved ICE badges were staged for the apprehension." Ex. D at 9.

47. Inside the room were three men seated in chairs, wearing matching dark blue or nearly black tops and dark tan or brown trousers. Petitioner recalls no agency logo or insignia on their clothing. The three men spoke only English; communication occurred through a Korean interpreter reached by telephone. They told Petitioner that she was an "illegal alien" and that they had to take her. They asked her name and she gave it. Decl. of Eunha Oh ¶¶ 46-47. To Petitioner's knowledge, no officer stated the agency he represented, stated the legal basis for the arrest in terms she could understand, or advised her of any right. *Id.* ¶¶ 46, 48. To the extent the Form I-213's assertion that officers displayed "approved ICE badges" (Ex. D at 9) conflicts with Petitioner's account, the conflict is a disputed issue of fact that no adjudicator has ever resolved on a record.

48. No document of any kind was shown to Petitioner in that room, and she signed nothing there. The officers retained her passport and her biometrics appointment notice. Decl. of Eunha Oh ¶¶ 48, 54.

49. No warrant of any kind was produced, shown, read, or served on Petitioner, not a judicial warrant, and not an administrative warrant of arrest on Form I-200 under 8 C.F.R. § 236.1(b). *Id.* DHS submitted no warrant to the Immigration Court in the bond proceedings (Ex. H ¶¶ 11-12); its entire evidentiary submission consisted of the Form I-213 (Ex. D) and an FBI Identity History Summary (Ex. C). On information and belief, no warrant of arrest had issued for Petitioner at the time she was seized.

50. Nothing in the record suggests, and DHS has never asserted, that the arresting officers believed Petitioner was "likely to escape before a warrant [could] be obtained." 8 U.S.C. § 1357(a)(2). The opposite is documented: DHS knew her identity, her A-number, her address of record, her pending application, and the precise time and place she was required to appear, at least twenty-three days in advance. The Form I-213 records the method of location and apprehension simply as "NCA (generally referring to Non-Custodial Arrest)," and does not articulate any basis for proceeding without a warrant. Ex. D at 8-9.

51. Petitioner asked to retrieve her electronic cigarette from her bag and was refused. Her bag, her passport, and her appointment notice were taken from her and retained. She was handcuffed in front. Fearing humiliation as she was walked through the public area of a government building, she asked for something to cover the handcuffs; she was given a covering too small to conceal them and used her own shirt instead. She was not permitted to speak with Mr. Moon, who was waiting outside and who did not

learn what had happened to her until later. She was placed into an unmarked black sport utility vehicle bearing no agency markings. Decl. of Eunha Oh ¶¶ 49-54.

52. The Form I-213 records the arrest as occurring at approximately 11:20 a.m. Ex. D at 10. Petitioner's asylum biometrics, which was the purpose for which she had been summoned, were taken that same day, in custody. *Id.*

**E. Post-Arrest Processing and the Absence of Any Custody Determination.**

53. Petitioner was driven approximately twenty minutes to a facility in downtown Los Angeles, where her fingerprints were taken. She was presented with a document in English whose contents were never substantively explained to her, even through the telephonic interpreter, and she declined to sign it. Decl. of Eunha Oh ¶¶ 55-57.

54. Petitioner was then held in a very cold room for approximately ten to eleven hours. She was seated without a mattress until approximately 8:30 p.m., when she was given a mattress and a plastic blanket. She was not permitted to contact counsel, family, or the Consulate General of South Korea, and she was not advised of any right to do so. *Id.* ¶¶ 58-60; *see* 8 C.F.R. § 287.3(c).

55. At approximately 11:00 p.m. that night Petitioner was transported to the Adelanto ICE Processing Center, arriving at approximately 4:00 a.m. on August 21, 2026. The only document she signed in the course of the entire process was an acknowledgment

of her detention at Adelanto. No other document was explained or provided to her. Decl. of Eunha Oh ¶¶ 61, 63.

56. On August 20, 2026, DHS issued Petitioner a Notice to Appear (Form I-862; Event No. LOS2608001811), charging her as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled. Ex. J. The Notice to Appear does not designate her an "arriving alien." It reflects no credible-fear determination and no vacatur of any expedited removal order. Proceedings were commenced under INA § 240.

57. At no time within forty-eight hours of Petitioner's warrantless arrest, or at any time thereafter, was any determination "whether the alien will be continued in custody or released on bond or recognizance" communicated to Petitioner, as 8 C.F.R. § 287.3(d) contemplates. On information and belief, no such determination was made. On information and belief, no Form I-286, Notice of Custody Determination, was ever prepared or served. No DHS officer ever set a bond, denied a bond, or stated any reason for continued custody. Petitioner was never advised, in any language, that she had the right to request that an Immigration Judge redetermine her custody. Decl. of Eunha Oh ¶¶ 48, 60.

58. The only statements in the record bearing on custody are two conclusory recitations in the Form I-213: "OH will remain in ICE Custody pending a hearing with an Immigration Judge," and "OH will remain in ERO Los Angeles custody pending HER

removal to South Korea." Ex. D at 10-11. Neither is a custody determination. Neither reflects any individualized assessment of danger, flight risk, bond amount, or conditions of supervision. The second presumes the outcome of removal proceedings that had not yet begun.

**F. Petitioner's Ties, Sponsor, and Community Support.**

59. Petitioner has resided continuously in Los Angeles since her entry. Since 2025 she has rented, under a lease in her own name, an apartment at 918 S. Oxford Avenue, PH 4, Los Angeles, California. That apartment remains available to her. Decl. of Eunha Oh ¶ 33. The address appearing on her USCIS notices, 621 S. Western Avenue, G02, Los Angeles, California 90005 (Exs. E, F), is the address Mr. Tak placed on the Form I-589 he prepared, and Petitioner believes that address is Mr. Tak's office address. Petitioner will file a Form EOIR-33 stating her correct address within five days of any release. *Id.* ¶ 34.

60. A noncitizen who holds a residential lease in her own name, in her own city, for the period preceding her arrest is not a person without a fixed address. *Guerra* factor 1 is satisfied on the face of this record.

61. Benjamin Min-Ho Moon is a United States citizen, born in the United States, who has been in a relationship with Petitioner for approximately three months and who drove her to the appointment at which she was arrested. He maintains a residence in Las Vegas, Nevada, where the couple have spent much of their time together, and he has also

stayed with Petitioner at her Los Angeles apartment. He has provided Petitioner with substantial financial support. *Id.* ¶¶ 35, 36, 41.

62. Mr. Moon has submitted a declaration under penalty of perjury committing to serve as Petitioner's third-party custodian; offering her a private, rent-free room in his home; committing to personally transport her to every hearing, check-in, and attorney appointment; committing to ensure that a Form EOIR-33 is filed within five days of her release; committing to contribute toward any bond this Court or the Immigration Court sets; and committing to ensure her compliance with every order of the court and of DHS. Ex. K at 50-53. Petitioner is prepared to be released to either address that Mr. Moon and she has made available, her own Los Angeles apartment, which keeps her within this District and convenient to the Adelanto Immigration Court, or Mr. Moon's Las Vegas residence, with Mr. Moon serving as third-party custodian at whichever address this Court directs. Decl. of Eunha Oh ¶ 80.

63. Mr. Moon's residence, employment, and income are documented by his current lease, a utility bill in his name at that address, his 2023, 2024, and 2025 federal income tax returns, and his 2025 Form W-2. He has been employed as a Senior Account Executive at Alexander & Tom, Inc. since September 2023. Ex. K at 57-120.

64. Andrew Chen, a United States citizen who has known Petitioner for approximately one year, has submitted a letter of support describing her as kind,

responsible, respectful, and dependable, and stating his belief that she will comply with her legal obligations. *Id.* at 124-125.

65. Duan Kwon, Petitioner's pastor, has submitted a letter attesting to her character and to the support of her church community. *Id.* at 121-123. Petitioner attended church in South Korea and has continued to do so in the United States. Decl. of Eunha Oh ¶¶21, 38.

66. Petitioner has no criminal history. *Id.* ¶ 5. DHS's own FBI Identity History Summary, submitted as its Exhibit B at the bond hearing, reflects a single "cycle": the administrative immigration arrest of August 20, 2026 itself. Ex. C. It reflects no conviction, no charge, and no criminal arrest anywhere.

**G. Petitioner's Untreated Depression and the Conditions of Her Confinement.**

67. Petitioner has suffered from depression since the events in China described in Section IV.A above and in her pending asylum application. Before her arrest she managed it with antidepressant medication she had obtained in South Korea and kept at her Los Angeles apartment. She disclosed this to the arresting officers on August 20, 2026, and DHS recorded it on the Form I-213: "The subject claims good health. But takes anti-depression meds." Ex. D at 9. The same form asserts, on the following page, that Petitioner "claims to have no medical issues." *Id.* at 10.

68. Petitioner has received no antidepressant medication since she entered custody on August 20, 2026. On September 1, 2026 and again on September 11, 2026,

she submitted written requests for depression medication. Staff told her that an appointment with a doctor would be arranged. As of September 17, 2026, and 28 days into her detention, she had heard nothing further and had seen no physician. Decl. of Eunha Oh ¶¶ 68-69.

69. Petitioner cannot sleep. She requested a sleep aid and was told that none could be provided. She has developed persistent digestive problems and constipation, which she attributes to the food served at the facility; she received medication for that condition approximately three days after requesting it, with limited relief. *Id.* ¶¶ 70-71.

70. The housing unit is cold. Petitioner requested an additional set of clothing on August 28, 2026 and did not receive it until September 8, 2026. She wears all of the clothing she has at night in order to stay warm, and has been unable to launder her sweatshirt during the day because it takes too long to air-dry and she needs it at night. She has been issued a single towel, heavily stained, which she washes and reuses. *Id.* ¶¶ 71-73.

71. On the evening of September 13, 2026, Petitioner washed her cold feet with warm water at a restroom sink. Another detainee reported her to an officer. The officer called out Petitioner's bed number loudly in front of more than one hundred people and directed her to clean the restroom. When Petitioner asked why she could not wash her feet in a restroom where detainees brush their teeth, wash their faces, and launder socks, underwear, and dishes, the officer stated that Petitioner could not understand English, that

she had psychological problems, and that she needed to take medication. Petitioner returned to the restroom and cleaned the sink area with soap. *Id.* ¶¶ 74-75.

72. Petitioner does not assert a freestanding conditions-of-confinement claim in this Petition. She pleads these facts because the conditions of confinement are an express consideration in assessing whether continued civil detention without an adequate individualized hearing has become unreasonable, and because the deterioration of an untreated psychiatric condition bears directly on the urgency of the relief sought

**H. The Bond Proceedings and the September 15, 2026 Denial.**

73. Because DHS never served a Form I-286 and never advised Petitioner of her right to seek review of her custody, no bond request was made in the first eleven days of her detention.

74. Undersigned counsel filed a Motion for Bond Determination with the Adelanto Immigration Court, received August 31, 2026. On September 3, 2026, the court rejected the filing on the sole ground that no Notice of Entry of Appearance had been accepted and that the Form EOIR-28 was incomplete. Counsel corrected and refiled the motion the same day, September 3, 2026, together with a ninety-two-page evidentiary submission. Ex. K.

75. The motion argued that under *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 U.S. App. LEXIS 22798 (9th Cir. July 30, 2026), Petitioner is detained under 8 U.S.C. § 1226(a) rather than § 1225(b)(2)(A) and is bond-eligible notwithstanding *Matter*

*of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025); that she is not a danger; and that she is not a flight risk. It expressly requested, in the alternative, that the court state the statutory and regulatory basis for any contrary jurisdictional holding, and make an alternative finding under *Matter of Guerra* — so as to permit meaningful review. Ex. K at 36-37. The Immigration Judge accepted the statutory premise: he exercised bond jurisdiction, conducted a custody redetermination under 8 C.F.R. § 1236, and applied the burden allocation of INA § 236(a). Ex. G at 14. The question of detention authority is therefore not in dispute, and Petitioner does not present it for decision.

76. DHS filed its evidentiary submission at 12:32 a.m. on September 15, 2026 – the morning of the hearing. It consisted of two exhibits: the Form I-213 with continuation pages, and the FBI Identity History Summary. Ex. C; Ex. D. DHS filed no brief, no declaration, no warrant, no Form I-286, and no evidence of any kind that Petitioner had ever failed to appear for anything. Ex. H ¶¶ 11-12.

77. The custody redetermination hearing was held on September 15, 2026, before Immigration Judge Jonathan Brent at the Adelanto Immigration Court. Petitioner appeared by video from inside the Adelanto ICE Processing Center; counsel appeared by Webex. Petitioner gave no testimony. No witness was examined, and the matter proceeded on the written submissions and argument of counsel. Ex. H ¶¶ 2, 5, 7.

78. Counsel for Petitioner argued that the warrantless arrest violated INA § 287(a)(2) and 8 C.F.R. § 287.8(c)(2) (*Id.* ¶ 9); that the Form I-213 described a pre-planned

operation, contained no notation of any Form I-200 warrant, and recorded no basis to believe Petitioner was likely to escape; that the form bore no signature of the arresting officer and that its "Alien has been advised of communication privileges" field was not marked (*Id.* ¶¶ 10-12); and that no Form I-286 had ever been issued and no custody determination had been made within forty-eight hours as 8 C.F.R. § 287.3(d) requires; that the arrest violated the Fourth and Fifth Amendments (*Id.* ¶¶ 14-15); that the burden should therefore rest on the Department; and that the court should consider Petitioner's financial circumstances and alternatives to detention under *Hernandez v. Sessions*. *Id.* ¶¶ 16-17. Counsel asked on the record whether any Form I-200 or Form I-286 existed, observing that neither appeared in ECAS. The Department produced neither, then or since. *Id.* ¶¶ 11-12.

79. The Immigration Judge declined to reach the constitutional questions. He asked repeatedly for authority that an egregious constitutional violation could bear on a custody decision and, finding none, ruled that he was "finding that even if there were to be an egregious violation of the Constitution, that does not bear on the Court's decision . . . insofar as the court can see." Ex. H ¶ 21. He further found that the burden of proof rested on Petitioner rather than on the Department. *Id.* ¶ 22.

80. The Department did not concede the underlying facts. It argued that "even assuming arguendo" the facts were as Petitioner's counsel described them, "the absence

of a warrant is not an egregious violation" and would have no impact on bond. Ex. H ¶ 18.

81. The Immigration Judge denied bond. The written order is a one-page EOIR form order on which the box marked "Denied, because" is checked and the blank line following it reads, in its entirety, "flight risk." Ex. G at 14-15. The court delivered an oral decision applying *Matter of Guerra*. Ex. H ¶ 23. It found that Petitioner had no established fixed address, because the only residence offered was that of her boyfriend of three months in Las Vegas and it was not clear she had lived with him previously; that approximately one year of residence in the United States was a short period; that she had no established family ties; that there was "no showing of employment history"; that her entry without inspection was a negative factor; that the short duration of the relationship left the court unconvinced her sponsor could ensure her appearance; that the declarations from her pastor and her friend, while favorable, did not establish community ties and would not tie her to Las Vegas, where the sponsor letter placed her; and that although she had filed a Form I-589, "there was nothing filed evidentiary wise to show what the nature of that claim is or anything that would lead the court to believe it is cognizable." The court concluded that no amount of bond would be appropriate. Ex. H ¶¶ 24-32.

82. Petitioner does not ask this Court to revisit those discretionary findings, and Count Four is not addressed to them. She notes only what the oral decision did not contain: any adjudication of whether her arrest and detention were lawful, any allocation of the

burden to the party seeking to confine her, and any consideration of her ability to pay or of conditions short of detention.

83. DHS waived appeal. Petitioner reserved appeal, with an appeal deadline of October 15, 2026. Ex. G at 15.

84. Petitioner has now been detained for 29 days. Her master calendar hearing is calendared for October 6, 2026. Ex. I at 22. No individual calendar hearing has been set, no application for relief has been filed with the Immigration Court, and no asylum interview has occurred.

**I. The Reliability of DHS' Sole Evidentiary Submission.**

85. DHS' Form I-213 is internally contradictory in ways that bear directly on the weight it can carry. It states that Petitioner "claims to have no medical issues," while the same form records that she "takes anti-depression meds." Ex. D at 9-10. It states that Petitioner "claims no fear if returned to South Korea," although the entire occasion of the arrest was her appearance at a biometrics appointment for a pending asylum application, and although the same form identifies her as a North Korean national by birth. *Id.* at 10. It further recites, in a block of pre-formatted "mitigating factors" entries, that Petitioner "has no known ties to the community precluding appropriate law enforcement action" and has "no known personal or family circumstances precluding appropriate law enforcement action" — enforcement-priority fields that record no individualized assessment of her ties or her family at all, and that the Department nonetheless offered as

its only evidence bearing on flight risk. *Id.* at 10. It states that she has no children, although she has a daughter in North Korea. *Id.* at 8; Decl. of Eunha Oh ¶ 8.

86. An authenticated Form I-213 is "presumed to be reliable in the absence of evidence to the contrary presented by the alien." *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995). But "[a] petitioner who produce[s] probative evidence that contradicts anything material on the I-213 would cast doubt upon its reliability," and in that event the factfinder "would be hard put to find the I-213 clear and convincing evidence . . . without the government's producing evidence to show the reliability of the information on the I-213." *Id.* at 311. Here the government asked an adjudicator to find flight risk on the strength of a document that contradicts itself on health, fear, community ties, and family, and that contains no fact suggesting flight at all.

87. The Form I-213 also records, affirmatively, that "OH was offered incentivized voluntary departure and OH refused." Ex. D at 10. Petitioner does not recall being offered voluntary departure or being asked whether she wished to accept it. Decl. of Eunha Oh ¶ 79. If the recitation is accurate, it is difficult to reconcile with a finding of flight risk, since a person intending to abscond does not decline a funded departure in order to remain in detention and litigate an asylum claim. If it is inaccurate, it is one more error in the only document the Department submitted.

//

//

## V. EXHAUSTION IS SATISFIED OR EXCUSED

88. Petitioner acknowledges *Leonardo v. Crawford,* 646 F.3d 1157 (9th Cir. 2011), which held that a detainee who receives an adverse bond determination from an Immigration Judge should ordinarily appeal to the Board of Immigration Appeals before seeking habeas relief, and which remanded with instructions to dismiss the petition without prejudice where the petitioner "pursued habeas review of the IJ's adverse bond determination before appealing to the BIA." *Id.* at 1160. Prudential exhaustion is not jurisdictional and may be excused. *Laing v. Ashcroft,* 370 F.3d 994, 997–98 (9th Cir. 2004). It should be excused as to the claims pleaded here, for the independent reasons set out below.

89. The exhaustion requirements applicable to 28 U.S.C. § 2241 are satisfied or excused. Petitioner does not challenge a final order of removal — there is none. She challenges the statutory and constitutional legality of her civil detention. *See Demore,* 538 U.S. at 516–17; *Zadvydas*, 533 U.S. at 688; St. Cyr, 533 U.S. at 301.

90. Petitioner has nonetheless pursued the administrative avenue available to her. She filed a motion for bond determination, litigated it to decision, and received an adverse order on September 15, 2026. She reserved appeal to the Board of Immigration Appeals and intends to perfect that appeal within the time allowed. Ex. K; Ex. J. This Petition and that appeal are not duplicative: they present different questions to different tribunals.

91. Prudential exhaustion should be excused as to the claims pleaded here, for four independent reasons.

92. First, the Board of Immigration Appeals lacks authority to decide the constitutional questions presented. The Board does not rule on the constitutionality of the statutes and regulations it administers, and it has no jurisdiction to adjudicate a Fourth Amendment challenge to the manner of an ICE arrest or to award release as a remedy for it. Requiring Petitioner to present such claims to a tribunal that cannot decide them serves no purpose.

93. Second, exhaustion would be futile as to the burden-allocation claim. Petitioner does not contend that every claim here lies beyond the Board's reach. The Board can order a new custody hearing, and Petitioner's reserved appeal seeks that relief. What the Board cannot do is adjudicate whether her arrest violated the Fourth Amendment, whether the Department disregarded its own custody regulations, or whether the remedy for either is release. Those are the claims for which exhaustion should be excused. The Board is bound by *Matter of Guerra*, which places the burden on the detained noncitizen. A claim that *Guerra*'s allocation is unconstitutional as applied cannot succeed before the body bound to apply it. *See Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (exhaustion may be excused "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void" (quoting

*S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981))); *Ali v. Ashcroft,* 346 F.3d 873, 878 (9th Cir. 2003) (futility where the agency's position is fixed).

94. Third, the administrative remedy is not efficacious in time. A Board appeal from a bond order routinely takes months. Petitioner is detained now, and each additional day of unlawful detention is an irreparable injury the writ exists to remedy. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

95. Fourth, no further administrative record is needed. The facts material to these claims, i.e., the appointment notice (Ex. F), the I-213's description of the staged operation (Ex. D), the absence of any warrant or Form I-286 in the record (Ex. H ¶¶ 11-12), and the text of the one-line bond order (Ex. G), are documentary and before this Court.

96. District courts in this Circuit have declined to require prudential exhaustion where a detainee has been held without an adequate custody determination. *See Poot v. Mullin,* No. 5:26-CV-3321-CTS, 2026 U.S. Dist. LEXIS 203946, at *14-16 (C.D. Cal. Sep. 9, 2026); *Xianming H. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-02543-TLN-CKD, 2026 WL 1283415, at **4 (E.D. Cal. May 11, 2026); Huayan v. Chestnut,* No. 1:26-cv-03696-DAD-AC (HC), 2026 U.S. Dist. LEXIS 107955, at *2 (E.D. Cal. May 15, 2026).

//

//

# VI. CLAIMS FOR RELIEF

## COUNT ONE

### Detention Without Lawful Authority: 8 U.S.C. §§ 1226(a), 1357(a)(2); 8 C.F.R. § 287.8(c)(2); the Fourth Amendment

97. Petitioner realleges and incorporates each preceding paragraph.

98. Section 1226(a) authorizes the arrest and detention of a noncitizen pending a decision on removal only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The sole statutory exception relevant here permits a warrantless arrest of a person already present in the United States only where the officer has reason to believe both that she is present in violation of the immigration laws and that she "is likely to escape before a warrant can be obtained for [her] arrest." 8 U.S.C. § 1357(a)(2). The two conditions are conjunctive. The Department's own regulation makes the warrant requirement mandatory and the exception narrow: a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii).

99. Here the escape predicate was not and could not have been satisfied. DHS had Petitioner's identity, alien number, address of record, photograph, physical description, and pending application. USCIS itself issued the notice compelling her attendance at a specific address, on a specific date, at a specific hour – and issued it twenty-three days before the arrest. By ICE's own account, ERO coordinated with the

Application Support Center, worked from photographs of Petitioner, and staged officers in a private room in advance of her arrival. Ex. D at 9. Whatever the precise moment ERO learned of the appointment, an agency able to arrange all of that before its target walked through the door had time to obtain a warrant from a neutral magistrate or, at the very least, an administrative warrant from its own authorized officer.

100. No warrant of any kind had issued at the time of the seizure. No warrant was shown or served on Petitioner. DHS produced no warrant in the bond proceedings, and the Form I-213 recites no warrant and articulates no basis for dispensing with one. Ex. D; Ex. H ¶¶ 11-12; Decl. of Eunha Oh ¶¶ 48, 63.

101. Petitioner's detention therefore never rested on a lawful exercise of the arrest and detention authority Congress conferred. The custody in which she remains is the direct and unbroken product of a seizure that neither the statute nor the regulation authorized, and it cannot be sustained on habeas.

102. The seizure independently violated the Fourth Amendment, which protects all persons within the United States, including noncitizens present without authorization, against unreasonable seizures. An arrest is a seizure. The violation was egregious, not merely technical. Officers arrested Petitioner at a government appointment that the government itself had compelled her to attend in furtherance of her own application for humanitarian protection; did so in a private room in which officers had been staged in advance; wore no identifiable agency insignia and, on Petitioner’s account, never

identified their agency as 8 C.F.R. § 287.8(c)(2)(iii) requires; confiscated her passport and her appointment notice; refused her any contact with the United States citizen waiting for her outside; transported her in an unmarked vehicle; held her incommunicado for approximately ten hours; and presented her with an English-language document that was never explained to her. A deliberate decision to convert a compelled benefits appointment into an arrest site, without a warrant that could readily have been obtained, is conduct a reasonable officer should have known was unlawful. *See Orhorhaghe v. INS*, 38 F.3d 488, 493 (9th Cir. 1994); *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1018 (9th Cir. 2008); *Gonzelez-Rivera v. INS,* 22 F.3d 1441, 1449 (9th Cir. 1994).

103. Petitioner does not ask this Court to suppress evidence in her removal proceedings; that request, if made, belongs to the Immigration Court. She asks this Court to hold that the custody that began with an unlawful seizure and has never been cured by any lawful custody determination cannot be sustained on habeas, and to order her release on conditions.

## COUNT TWO

### Fifth Amendment Due Process: The Arrest at a Compelled Government Appointment and the Absence of Any Pre-Deprivation Process

104. Petitioner realleges and incorporates each preceding paragraph.

105. The Fifth Amendment's Due Process Clause protects all "persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Freedom from imprisonment "lies at the heart of the liberty that Clause protects." *Id.* at 690.

106. The Due Process Clause required a hearing before, not after, this deprivation of liberty. Petitioner had been present and compliant for more than eleven months (Decl. of Eunha Oh ¶¶ 23, 24); had filed an affirmative application for humanitarian protection (Ex. E); had used her true name throughout (Decl. of Eunha Oh ¶ 39); had never been the subject of any enforcement action; and had appeared, voluntarily and early, at the very appointment the government scheduled for her (*Id.* ¶¶ 24, 40-41). Respondents chose not to detain her at any point during that period, and instead used the appointment USCIS compelled her to attend, under an express warning that failure to appear could result in abandonment of her asylum application, as the instrument of her apprehension. Where the government makes that choice, a post-deprivation custody hearing cannot serve as an adequate procedural safeguard, because it comes after the fact. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the private interest in freedom from physical restraint is at its zenith; the risk of erroneous deprivation was substantial and was realized; and the government identified no interest that could not have been served by a warrant and a pre-deprivation determination.

107. Government conduct that is fundamentally unfair violates due process independent of the Fourth Amendment. *See Gonzalez-Rivera v. INS*, 22 F.3d 1141, 1449 & n.5 (9th Cir. 1994) (a violation is egregious where evidence is obtained "by deliberate violations of the fourth amendment, or by conduct a reasonable officer should have known is in violation of the Constitution").

108. Respondents used a benefits appointment that USCIS itself compelled Petitioner to attend, under threat of abandonment of her asylum application, as the instrument of her apprehension. The arrangement required the affirmative participation of Application Support Center personnel, who escorted her into a room where ERO officers had been staged. Ex. D at 9. The government thereby converted the exercise of a statutory right into the occasion for its extinguishment.

109. Respondents further failed to provide the advisals their own regulations require. Ex. D at 8; Decl. of Eunha Oh ¶ 60. Under 8 C.F.R. §§ 287.3(c) and 236.1(e), an arrested alien must be advised of the reason for the arrest, of the right to be represented by counsel at no expense to the government, that any statement may be used against her, and of the right to communicate with her consular officer. On information and belief, none of these advisals was given in a language Petitioner understands. *Id.* She is a citizen of the South Korea (Ex. A) and was never permitted to contact her consulate.

110. The cumulative circumstances, i.e., arrest at a compelled government appointment without a warrant, by officers who did not identify their agency, followed

by confiscation of documents, denial of contact with her partner, transport in an unmarked vehicle, approximately ten hours of incommunicado detention in a cold room without bedding, and presentation of an unexplained English-language document for signature, reflect a deprivation of liberty without the fundamental fairness the Fifth Amendment requires. Although an interpreter participated by telephone, the interpretation alone did not cure the defect; she was not meaningfully informed of what the document was, what it purported to accomplish, or the consequences of signing it.

## COUNT THREE

### Detention Without Any Initial Custody Determination — 8 C.F.R. §§ 287.3(d), 236.1(c)(8), (d), (g); the *Accardi* Doctrine; and the Fifth Amendment

111. Petitioner realleges and incorporates each preceding paragraph.

112. An agency's violation of its own regulation invalidates the resulting action where "(1) the agency violated one of its regulations; (2) the subject regulation serves a 'purpose of benefit to the alien'; and (3) the violation 'prejudiced interests of the alien which were protected by the regulation.'" *Sanchez v. Sessions*, 904 F.3d 643, 650 (9th Cir. 2018) (quoting *United States v. Calderon-Medina*, 591 F.2d 529, 532 (9th Cir. 1979)). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz,* 415 U.S. 199, 235 (1974). An agency may not "sidestep" the decisionmaker its own regulations designate. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 266–67 (1954).

113. Where an alien is arrested without a warrant, 8 C.F.R. § 287.3(d) requires that a determination be made "within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance," as to "whether the alien will be continued in custody or released on bond or recognizance."

114. DHS was required to make an initial custody determination through an authorized official before Petitioner could meaningfully invoke the Immigration Judge's regulatory review or redetermination process. *See* 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1236.1(d)(1), 1003.19(a)–(b). DHS's failure to make or communicate such a determination deprived Petitioner of the predicate decision necessary to seek meaningful Immigration Judge review.

115. On information and belief, DHS made no initial custody determination in Petitioner's case, within forty-eight hours or ever. No Form I-286 was served. No bond was set. No bond was denied. No officer identified any reason for continued custody. Petitioner was never advised in any language that she could seek review of her custody before an Immigration Judge. Decl. of Eunha Oh ¶ 64; Ex. H ¶ 11-12.The record contains nothing but two conclusory recitations on the Form I-213 that Petitioner "will remain in ICE Custody." Ex. D at 10-11.

116. Petitioner was prejudiced. Because compliance with 8 C.F.R. § 287.3(d) is mandated by the Due Process Clause, "prejudice may be presumed." *Sanchez,* 904 F.3d at 652. In the alternative, Petitioner identifies the prejudice specifically: no officer

advised her that she could seek review of her custody, and no request could be made on her behalf until counsel independently learned of her detention and circumstances. Petitioner remained detained for twenty-six days before any adjudicator reviewed her custody. When an Immigration Judge finally considered custody, moreover, the proceeding could not function as a meaningful redetermination: DHS had not provided Petitioner with any prior custody determination, articulated its position regarding release or bond, identified the legal basis for continued detention, or supplied a reasoned custody determination for the Immigration Judge to review.

117. The failure violates the regulations, the *Accardi* doctrine, and the Due Process Clause. Detention that has never at any point rested on an individualized custody determination by an officer authorized to make one is detention without the process the Executive itself has promised. Petitioner acknowledges that the remedy for a regulatory violation of this kind is ordinarily the process that was withheld rather than release, *see Accardi,* 347 U.S. at 268, and she seeks release on this Count only in combination with Count One, which challenges the lawfulness of the custody itself.

## COUNT FOUR

### Fifth Amendment Due Process Clause: The September 15, 2026 Hearing Was Not a Constitutionally Adequate Custody Determination As Applied to Petitioner

118. Petitioner realleges and incorporates each preceding paragraph.

119. Freedom from physical restraint by the government is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion); *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Civil detention accordingly requires procedures adequate to the magnitude of the interest at stake. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

120. The hearing Petitioner received was constitutionally inadequate in four respects. Petitioner does not challenge the Immigration Judge's weighing of the *Guerra* factors, and nothing in this Count asks this Court to reweigh them.

121. *The court declined to adjudicate the lawfulness of the arrest and detention at all.* Counsel squarely presented the § 1357(a)(2) violation, the absence of any Form I-200, the absence of any Form I-286 or forty-eight-hour determination under 8 C.F.R. § 287.3(d), and the resulting Fourth and Fifth Amendment violations. The Immigration Judge held the entire subject categorically irrelevant, ruling that even a conceded "egregious constitutional violation" would not affect his decision. Ex. H ¶ 18. The consequence is that no tribunal has ever determined whether Petitioner is lawfully in custody. The Immigration Judge held he could not reach it; the Board cannot adjudicate a Fourth Amendment challenge to the manner of an ICE arrest or award release as a remedy for one. If this Court does not reach it, no court will.

122. That is not a quarrel with the Immigration Judge's discretion. The Immigration Judge's refusal to consider the legality of Petitioner's arrest left unresolved

a legal challenge to the lawfulness of the seizure and detention. This Court has jurisdiction to adjudicate Petitioner's independent constitutional and regulatory challenge to her custody. The claim is not that an unlawful arrest alone nullifies all subsequent immigration proceedings, but that DHS' alleged violations, together with the circumstances and consequences of the arrest, bear directly on the lawfulness of Petitioner's present detention and the adequacy of the process afforded to her. *See Sanchez v. Sessions,* 904 F.3d 643, 649–55 (9th Cir. 2018) (a pre-hearing regulatory violation warrants termination without prejudice where the regulation benefits the noncitizen and the violation was egregious, meaning that it "involved conscience-shocking conduct, deprived the petitioner of fundamental rights, or prejudiced the petitioner").

123. *The burden was misallocated.* Under *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), the detained noncitizen bears the burden of establishing that she is neither a danger nor a flight risk, and the Immigration Judge so ruled after argument. Ex. H ¶ 22. Petitioner does not press a facial challenge. In *Rodriguez Diaz v. Garland,* 53 F.4th 1189 (9th Cir. 2022), reh'g en banc denied, 83 F.4th 1177 (9th Cir. 2023), the Ninth Circuit held that § 1226(a)'s procedures, including the allocation of the burden to the detainee, satisfy due process both facially and as applied to the petitioner there. The panel expressly did "not foreclose all as-applied challenges to § 1226(a)'s procedures," *id.* at 1213, and this is such a challenge. *Rodriguez Diaz* concerned a noncitizen detained under 8 U.S.C.

§ 1226(a) with an extensive criminal history who received an initial bond hearing, testified, was represented, and sought a second hearing after fourteen months of detention. Petitioner's circumstances differ in every respect the *Mathews* calculus makes relevant: she is an indigent, detained asylum seeker with no criminal history of any kind (Exs. C, E); she does not speak or read English (Decl. of Eunha Oh ¶ 67); she gave no testimony and was asked no questions (Ex. H ¶ 7); the Department's entire evidentiary submission was filed at 12:32 a.m. on the morning of the hearing (Exs. C, D); and the adjudicator denied release outright without considering her ability to pay or any condition of supervision (Ex. H ¶¶ 33, 34). On those facts, requiring the party with the least access to evidence and the greatest liberty interest to prove a negative, while the party seeking to confine her need prove nothing, did not satisfy due process. *Cf. Addington v. Texas*, 441 U.S. 418, 427 (1979) ("The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.").

124. *Neither ability to pay nor any alternative to detention was considered.* Due process requires consideration of the detainee's financial circumstances and of alternative conditions of supervision before liberty is denied on the theory that appearance cannot otherwise be secured. *Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017). Petitioner does not contend that *Hernandez* compels any particular bond amount. She contends something narrower: that a categorial ruling that no amount of bond and no

condition of release could secure her appearance cannot be reached without considering what those amounts and conditions would be. Counsel argued *Hernandez* expressly, asked the court to consider Petitioner's financial means, and stated that Petitioner was never given the chance for alternatives to detention. Ex. H ¶¶ 16, 34. The oral decision addresses neither subject. Instead the court concluded that Petitioner was "such a flight risk that no amount of bond would be appropriate" (*Id.* ¶ 32) — a categorical denial of release entered without any finding that supervision, reporting, a third-party custodian, or electronic monitoring would be inadequate. A conclusion that no condition could suffice, reached without considering any condition, is not a reasoned denial.

125. *The government's evidence was served on the morning of the hearing*. The Department's entire evidentiary submission, i.e., the Form I-213, its continuation pages, and the FBI report, was uploaded at 12:32 a.m. on the morning of the hearing. Exs. C, D. Counsel stated on the record that he had received the Form I-213 only that day, shortly before the hearing began. Ex. H ¶ 8. The Form I-213 was the only document containing the November 2016 assertion, and it was the only evidence the Department offered on any subject. Exs. C, D. Due process requires notice and a meaningful opportunity to respond. *Mathews*, 424 U.S. at 333.

126. Section 1226(e) does not bar any of this. Each defect is a question of law or a constitutional claim: whether the legality of the arrest may bear on custody, who bears the burden, whether ability to pay and alternatives must be considered, and whether the

notice afforded was adequate. *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018) (plurality opinion); *Singh*, 638 F.3d at 1202.

## COUNT FIVE

### Fifth Amendment Due Process Clause: Continued Detention Without a Constitutionally Adequate Individualized Hearing

127. Petitioner realleges and incorporates each preceding paragraph.

128. Civil detention, even where initially authorized, may not continue indefinitely without an individualized determination that it is justified. *Zadvydas*, 533 U.S. at 690–91; *Demore v. Kim*, 538 U.S. 510, 528–31 (2003) (upholding mandatory detention as applied to a brief, limited period necessary to complete removal proceedings).

129. Petitioner has been detained since August 20, 2026. Her master calendar hearing is set for October 6, 2026 (Ex. I); no individual hearing has been calendared; and her asylum claim has never been heard by anyone. In the ordinary course, her detention will extend well past the point at which, on any view, an individualized hearing is constitutionally required.

130. The single custody proceeding Petitioner has received did not supply that individualized determination, for the reasons set out in Count Four. A hearing that allocates the burden to the detainee, that treats the lawfulness of her arrest as categorically irrelevant, and that denies release outright without considering her ability to pay or any condition of supervision is not the individualized determination due process contemplates.

131. The conditions of Petitioner's confinement bear on that assessment. She has gone without treatment for a documented psychiatric condition for the entire period of her detention, notwithstanding two written requests submitted on September 1, 2026 and September 11, 2026. She cannot sleep. She has untreated digestive illness. She has been cold enough to sleep in all of her clothing, and waited eleven days for a second set. Decl. of Eunha Oh ¶¶ 68-73. These facts do not state an independent claim in habeas, *see Pinson v. Carvajal*, 69 F.4th 1059, 1072–74 (9th Cir. 2023), but they are part of the calculus of reasonableness and they sharpen the urgency of the question.

132. Weighing the relevant considerations — the length of detention to date and its projected length; the absence of any fault on Petitioner's part for delay; the conditions of her confinement and the untreated deterioration of her health; the strength of her equities, including no criminal history, a residence held in her own name, a United States citizen third-party custodian, community and church ties, and a timely-filed, non-frivolous asylum claim; and the availability of conditions of supervision — Petitioner's continued detention without a constitutionally adequate hearing is unreasonable and unlawful.

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner, Eunha Oh respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Issue a writ of habeas corpus, or in the alternative an order to show cause returnable within seven days, directing Respondents to appear and justify the lawfulness of Petitioner's detention;

C. Declare that Petitioner's warrantless arrest on August 20, 2026 violated 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2), and the Fourth Amendment;

D. Declare that Respondents' failure to make and serve an initial custody determination violated 8 C.F.R. §§ 287.3(d) and 236.1(c)(8), (d), and (g), and the Due Process Clause of the Fifth Amendment;

E. Declare that the custody proceeding held on September 15, 2026 did not afford Petitioner the process the Fifth Amendment requires;

F. Order Petitioner's immediate release from custody on reasonable conditions of supervision, including release to Benjamin Min-Ho Moon as third-party custodian; or, in the alternative,

G. Order Respondents to provide Petitioner, within seven days, an individualized custody hearing before this Court or before an Immigration Judge vested with authority to order release, at which (i) the government bears the burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure Petitioner's appearance or the safety of the community; (ii) the adjudicator considers Petitioner's and her sponsor's ability to pay and

alternatives to detention; and (iii) the adjudicator makes findings of fact and states reasons on a contemporaneous record sufficient to permit meaningful review;

H. Enjoin Respondents from transferring Petitioner outside the Central District of California during the pendency of this Petition without leave of Court;

I. Award Petitioner her costs and reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

J. Grant such other and further relief as this Court deems just and proper.

## VIII. REQUEST FOR EXPEDITED CONSIDERATION

133. Petitioner is detained. She has been in custody for twenty-nine days without a lawful custody determination, and the sole custody proceeding she has received produced a two-word order. Each additional day of detention is an injury that cannot be undone. Petitioner respectfully requests that the Court set an expedited briefing schedule and issue an order to show cause returnable within seven days of the filing of this Petition, or as soon thereafter as the Court's calendar permits.

Dated: September 18, 2026

Respectfully submitted,

/s/ Gita B. Kapur
GITA B. KAPUR, ESQ.
Attorney for Petitioner, EUNHA OH

VERIFICATION

I, Gita B. Kapur, am counsel of record for Petitioner, Eunha Oh. Petitioner is detained at the Adelanto ICE Processing Center, does not read or speak English, and has been unable to review or sign documents there in person. As set forth in the accompanying Declaration of Su Kim, Ms. Su Kim, an attorney with this office fluent in Korean, communicated with Petitioner by telephone on September 17, 2026, read and translated the accompanying Declaration of Eunha Oh to her in full, and Petitioner confirmed its contents were true and correct and authorized its filing on her behalf. I have supervised the preparation of this Petition and verify it on Petitioner's behalf pursuant to 28 U.S.C. § 2242. I have reviewed the following in preparing this Petition: the records contained in Petitioner's administrative immigration file, including, but not limited to, the Form I-213 (Ex. D), the Notice to Appear (Ex. J), and the Order of the Immigration Judge dated September 15, 2026 (Ex. G); the FBI Identity History Summary submitted by the Department of Homeland Security (Ex. C); the Form I-797C notices issued by U.S. Citizenship and Immigration Services (Exs. E, F); the EOIR Automated Case Information record (Ex. I); Respondent's Motion for Bond Determination and evidentiary submission (Ex. K); Declaration of Robert Genovese (Ex. H); and the accompanying Declarations of Eunha Oh and Su Kim. To the best of my knowledge, information, and belief, formed after reasonable inquiry, the factual

allegations contained herein are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 18, 2026, at Los Angeles, California.

/s/ Gita B. Kapur
Gita B. Kapur
Attorney for Petitioner